**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZI XING XIN ZHANG,<br><br>Petitioner,<br><br>v.<br><br>JESSICA SAGE,<br><br>Respondent. | No. 4:26-CV-01193<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 3, 2026**

Zi Xing Xin Zhang is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). He is currently detained at the Federal Correctional Institution in Lewisburg, Pennsylvania. He commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release based on his claim that his continued detention has become unconstitutional. The Court will grant Zhang's Section 2241 petition.

## I. BACKGROUND

Zhang is a citizen and native of the People's Republic of China (China).[1] He avers that he entered the United States in 1992.[2] In July 2004, he adjusted his

---

1 *See* Doc. 10-2 at 2.
2 Doc. 1 ¶ 23.

status to Lawful Permanent Resident.[3] In 2008 in Lansing, Michigan, he was convicted of criminal sexual conduct: fourth degree, and was sentenced to 120 days' incarceration.[4] On September 5, 2008, he was served with a notice to appear, charging removability for having been convicted of a crime of moral turpitude under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i).[5]

On May 19, 2009, an Immigration Judge denied Zhang's application for withholding of removal and ordered Zhang removed to China.[6] According to that removal order, Zhang reserved his right to appeal,[7] but it does not appear that he ever sought review with the Board of Immigration Appeals (BIA).[8] According to Zhang, he waived his right to appeal.[9] Thus, the Immigration Judge's order of removal became final on June 18, 2009, when the time to appeal expired.[10]

On October 26, 2009, Zhang was released from custody on an Order of Supervision (OSUP).[11] Following his release from immigration custody in 2009, it does not appear that Zhang had any further encounters with law enforcement or issues with supervision for approximately 16 years. Respondent's recitation of

---

3 Doc. 10-6 ¶ 3.
4 *Id.* ¶ 5.
5 *Id.* ¶ 6.
6 Doc. 10-3 at 3.
7 *See id.*
8 *See* Doc. 10-6 ¶ 7.
9 *See* Doc. 1 ¶ 26.
10 *See* 8 C.F.R. § 1241.1(b).
11 Doc. 10-6 ¶ 8.

facts provides no information for the 16-year stretch between when Zhang was released on supervision in 2009 to when his release was revoked and he was re-detained by ICE on May 12, 2025, at a routine immigration check-in appointment.[12] Zhang avers that during this time, he has lived with his family in New York, worked hard, and built a successful business.[13]

Zhang has been in ICE custody since his May 12, 2025 revocation of release and re-detention, and is currently detained at FCI Lewisburg. He lodged the instant Section 2241 petition on May 5, 2026, and his petition was deemed filed on June 17, 2026, when the Court granted his motion for leave to proceed *in forma pauperis*.[14]

Zhang alleges that his removal to China is not reasonably foreseeable and thus his continued detention is unconstitutional. Respondent contends, on the contrary, that Zhang's removal is reasonably foreseeable. Zhang did not file a traverse and the time in which to do so has passed, so his Section 2241 petition is ripe for disposition.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the

---

12 *See id.* ¶¶ 8-9.
13 Doc. 1 ¶¶ 30, 31.
14 *See* Doc. 7.

United States."[15] Because Zhang filed the instant petition while he was detained within the jurisdiction of this court, is still currently detained by ICE, and asserts that his continued detention violates due process, this court has jurisdiction over his Section 2241 petition.[16]

## III. Discussion

Zhang brings an as-applied due process challenge to his continued detention under 8 U.S.C. § 1231. He argues that his removal to China is not reasonably foreseeable, so he should be released on supervision.[17]

Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'"[18] Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal period."[19] That 90-day period generally begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from

15 *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

16 *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement, do not "arise from" removal proceedings and can be addressed by district courts).

17 *See* Doc. 1 at p. 18.

18 *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).

19 8 U.S.C. § 1231(a)(1)(A).

[non-immigration] detention or confinement."[20] Detention is mandatory during this first 90 days.[21]

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'"[22] How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."[23] Of course, the phrase "a period reasonably necessary to bring about that alien's removal" provides no easily ascertainable guidelines.[24] According to *Zadvydas*, a period reasonably necessary

---

[20] *Id.* § 1231(a)(1)(B)(iii).

[21] *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)).

[22] *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

[23] *Zadvydas*, 533 U.S. at 689.

[24] *See Arteaga-Martinez*, 596 U.S. at 586 (Thomas, J., concurring in part); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez* that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving

to bring about a noncitizen's removal from the United States is presumptively six months.[25]

Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring an as-applied Due Process Clause challenge to their continued detention should that detention become prolonged and potentially unlawful.[26] Specifically, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the [noncitizen]."[27]

Zhang has been re-detained by ICE since May 12, 2025, following nearly 16 years of uneventful and apparently compliant supervised release. As noted above, Zhang's current detention is not his initial detention following issuance of a final order of removal; rather, his release has been revoked, apparently pursuant to 8 C.F.R. § 241.13(i).[28] That regulation provides as follows:

---

by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 576. The Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. *See id.* at 583-84. Moreover, the United States reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 583.

25 *See Zadvydas*, 533 U.S. at 701.

26 *See Zadvydas*, 533 U.S. at 699-701; *Guerrero-Sanchez*, 905 F.3d at 225; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing *Zadvydas*, 533 U.S. at 689, 701).

27 *Guzman Chavez*, 594 U.S. at 529 (internal quotation marks omitted) (citing *Zadvydas*, 533 U.S. at 701); *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention).

28 *See* Doc. 1-1 at 6 ("Notice of Revocation of Release").

(i) Revocation of release—

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. *The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future*. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.[29]

[29] 8 C.F.R. § 241.13(i) (emphasis added).

Respondent does not address this regulation. Respondent asserts only that Zhang was served "with a Notice of Revocation of Release."[30] Zhang, however, provided a copy of the Notice of Revocation of Release, which states that his release was revoked based on "changed circumstances in [his] case" insofar as "ICE is acquiring a travel document on your behalf and your removal is now imminent."[31] Consequently, Zhang's release appears to have been revoked pursuant to 8 C.F.R. § 241.13(i)(2).

This distinction is important. Despite Respondent's assertion that Zhang "has failed to establish that . . . there is no significant likelihood of removal in the reasonably foreseeable future,"[32] that is not Zhang's burden to prove at this point in the lengthy removal proceedings. Rather, pursuant to the plain language of the relevant regulation, it is *the government* who bears the burden of showing that there have been "changed circumstances," which circumstances indicate that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future" in order to justify revocation of release.[33]

In this case, the government has failed to carry its burden. According to Respondent, on July 7, 2025, almost two months after Zhang was re-detained, a

---

30 *See* Doc. 10 at 3; Doc. 10-2 at 4.
31 Doc. 1-1 at 6.
32 Doc. 10 at 5.
33 *See* 8 C.F.R. § 241.13(i)(2); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 & n.2 (D. Mass. 2025) (noting that it is improper burden shifting to require petitioner—who was suddenly re-detained following 10 years of uneventful supervised release—to establish a "good reason that his removal is not likely to occur in the reasonably foreseeable future").

TDR was submitted to ICE's Headquarters Removal and International Operations (HQ-RIO).[34] More than five months later, on December 26, 2025, HQ-RIO was informed that the TDR was pending identification verification by Chinese immigration officials.[35] Another five months elapsed, and Beijing immigration officials informed ICE that they were unable to verify Zhang's nationality based on the TDR submitted.[36] ICE requested Zhang's alien file in June 2026, and as of July 7, 2026, "a new TDR [is] being finalized for submission to HQ-RIO."[37]

Zhang has now been detained for almost 15 months, not including the more than four months he was detained in 2009 when he was first ordered removed (before being released on supervision). Thus, Zhang has been unable to be removed for at least 19 months while detained, as well as another 16 years during which he was released on supervision. The record reflects that Respondent has been actively trying to remove Zhang for more than a year, with very little to show for those efforts. In fact, as of July 7, 2026, ICE appears to be back at square one, *i.e.*, preparing a TDR for review by HQ-RIO. So even if Zhang had the burden to demonstrate that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, he has made this showing.

---

34 Doc. 10-6 ¶ 10.
35 *Id.* ¶ 11.
36 *Id.* ¶ 12.
37 *Id.* ¶¶ 13-15.

Therefore, whether it is Respondent's burden to prove that changed circumstances indicate that there is a significant likelihood that Zhang may be removed in the reasonably foreseeable future, or to rebut Zhang's showing that there is good reason to believe there is no significant likelihood of such removal, Respondent has not carried her burden.

First, and importantly, Zhang's release was revoked <u>before</u> the first TDR was even submitted for review to HQ-RIO. Neither the Notice of Revocation of Release nor Respondent's answer to the instant Section 2241 petition provide *any factual basis* that would authorize the revocation of Zhang's release and re-detention under Section 241.13(i)(2).[38]

Second, Respondent has not offered any post-hoc, individualized evidence showing why Zhang's travel documents could be expected in the reasonably foreseeable future such that he should remain in detention. To the contrary, the affidavit relied on by Respondent reflects that Zhang's removal is *not* reasonably foreseeable. If the second TDR process looks anything like the first, it could take almost a year to even get a response from Chinese immigration officials.

Furthermore, Respondent has not even proffered generalized information regarding, for example, repatriation statistics for Chinese immigrants like Zhang

[38] Moreover, the Notice of Revocation of Release appears to contain false information, as it claims that "ICE is acquiring a travel document" for Zhang and his "removal is now imminent," when no such TDR had even been submitted for internal review with HQ-RIO at that time, much less was his removal "imminent."

who arrived in the United States decades ago.[39] Deportation officer Mitchel Matusko avers that China "has been cooperative in the past with issuing TDs and accepting their citizens who have removal orders," so it is "believed that once the TD application is reviewed" by the Chinese embassy, "a TD will be issued."[40] No details are provided on when this review could take place or when a decision may be made by Chinese immigration officials. Matusko then concludes, "It is anticipated that petitioner's removal from the United States is imminent, therefore there is SLRRFF [presumably, a significant likelihood of removal in the reasonably foreseeable future]."[41] The constitutional due process protections of the Fifth Amendment require more than such speculative, conclusory statements.[42]

Finally, the Court observes that Respondent has put forth no argument or evidence regarding why Zhang's removal to China is more likely now than it was 17 years ago when Zhang could not be repatriated and was released on

---

39 *Cf. Nguyen v. Sage*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 (M.D. Pa. July 20, 2026) (Mariani, J.) (finding that government failed to rebut petitioner's showing that his removal to Vietnam was significantly unlikely in the reasonably foreseeable future even when relying on general repatriation statistics).

40 Doc. 10-6 ¶ 16.

41 *Id.* ¶ 17.

42 *See Phan v. Warden of Fed. Correctional Institution Lewisburg*, No. 3:26-cv-00770, 2026 WL 1080390, at *6 (M.D. Pa. Apr. 21, 2026) (Mehalchick, J.) (collecting cases); *Nguyen*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 ("The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondent's burden."); *Nguyen v. Sage*, No. 3:26-cv-1151, 2026 WL 1348513, at *7 (M.D. Pa. May 14, 2026) (Mariani, J.).

supervision.[43] Respondent, therefore, has not carried her burden to show that there is a significant likelihood of Zhang's removal in the reasonably foreseeable future.

In view of the foregoing, the Court will grant Zhang's habeas petition and order that he be released from custody. His release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances,"[44] so the Court will order Respondent to release him from custody within 48 hours and to restore the conditions of his prior supervised release.[45]

## IV. CONCLUSION

For all the above reasons, the Court will grant Zhang's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

43 *See Nguyen*, No. 3:26-cv-1151, 2026 WL 1348513, at *8 (citing *Thach v. English*, No. 3:26-cv-309, 2026 WL 1109344, at *2 (N.D. Ind. Apr. 26, 2026) (granting petition where government failed to rebut showing that petitioner's removal was unlikely in the reasonably foreseeable future and the respondent "does not explain why efforts to remove Thach to Vietnam will be successful now when they were unsuccessful in 2012 and when Vietnam has historically refused to accept individuals who entered the United States before 1995" for repatriation)).

44 *Zadvydas*, 533 U.S. at 700.

45 *See Nguyen*, No. 3:26-cv-1151, 2026 WL 1348513, at *8 (collecting cases).